# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| ALEXANDER MARQUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:23-CV-2455-K |
| | § | |
| US FOODS, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant US Foods, Inc.'s Motion to Compel Arbitration [and] Motion to Dismiss (the "Motion") (Doc. No. 20). Plaintiff Alexander Marquez filed a Response in opposition (the "Response") (Doc. No. 24) and Defendant US Foods, Inc. filed a Reply in Support of its Motion (the "Reply) (Doc. No. 25). The Court has carefully considered the Motion, the Response, the Reply, the supporting evidence, the applicable law, and any relevant portions of the record. Because an arbitration agreement was formed and it contains a valid delegation clause, the Court **GRANTS** the Motion to compel the parties to arbitrate. The Court **DENIES** the Motion to dismiss Plaintiff's claims upon compelling arbitration and hereby **STAYS** this matter pending arbitration proceedings or until the parties jointly move or stipulate to dismissal of this matter. The Court **DENIES without prejudice** Defendant's request for attorneys' fees as this matter is for the arbitrator, not the Court.

1

## I.    Factual and Procedural Background

All page citations to the record are to the CM/ECF page number, not the page number assigned by the relevant party.   Plaintiff Alexander Marquez worked for Defendant US Foods, Inc. as a Warehouse Selector at its facility in Garland, Texas. Doc. No. 1-1 at 24.  On June 1, 2023, Plaintiff was allegedly injured while lifting heavy boxes in the course of performing his job.  *Id.*  (The Court notes that Plaintiff also alleges he was injured on "August 18, 2023", *see id.* at 25, but this appears to be an error as it is inconsistent with Plaintiff's other evidence, *see, e.g.*, Doc. Nos. 24-1, 24-5, 24-11.) Plaintiff claims he suffered "serious bodily injuries and serious loss" and filed suit in state court on September 11, 2023.  *See* Doc. No. 1 at 2; *see also* Doc. No. 1-1 at 3. Plaintiff asserts negligence and gross negligence causes of action against Defendant. Doc. No. 1-1 at 25-28.

Defendant removed this case to federal court on November 3, 2023.  Doc. No. 1.  On April 4, 2024, Defendant filed this Motion to Compel Arbitration and Motion to Dismiss, asserting that Plaintiff and Defendant agreed to arbitrate work place injuries disputes.  *See* Doc. No. 20-2 (Dispute Resolution Plan for Texas Work Place Injuries); Doc. No. 20-3 (Summary of the Dispute Resolution Plan for Texas Work Place Injuries).

## II.   Legal Standard

The parties' Dispute Resolution Plan for Texas Work Place Injuries expressly provides that it "shall be governed, construed, and enforced according to the Federal

Arbitration Act" (the "FAA").  Doc. No. 20-2 (Ex. A-1) at ¶ 6.4.  Section 2 of the FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity or the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  Arbitration agreements are, therefore, "on an equal footing with other contracts . . . and require[] courts to enforce them according to their terms." *Rent-A-Center*, 561 U.S. at 67.  The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing §§ 3, 4).

In deciding a motion to compel arbitration, courts employ a two-step inquiry asking first whether the parties entered into an arbitration agreement and then determining whether legal constraints "render[] the claims nonarbitrable."  *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).  These questions are typically for the court.  *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (citing *Will-Drill*, 352 F.3d at 214).  But this analysis changes when the party moving to compel arbitration points to a delegation clause in the agreement.  *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018); *accord Kubala*, 830 F.3d at 201 ("[W]here the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes.").

A delegation clause "is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center*, 561 U.S. at 68; *see Kubala*, 830 F.3d at 202 ("Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator."). When a delegation clause is present, the court first determines whether "'the parties entered into *any arbitration agreement at all*,'" making sure to "distinguish[] between '"validity"' or '"enforceability"' challenges and '"formation"' or '"existence"' challenges." *Maravilla v. Gruma Corp.*, 783 F. App'x 392, 394 (5th Cir. 2019) (quoting *Kubala*, 830 F.3d at 201 and then *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018)). After finding that an agreement to arbitrate was formed, the court's second step is then limited to determining whether there is a valid delegation clause. *Maravilla*, 783 F. App'x at 394 (quoting *Kubala*, 830 F.3d at 202). The only question the court asks "is whether the purported delegation clause . . . evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202. "[A] valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id.*

"Courts apply ordinary state-law principles that govern the formation of contracts" in determining whether an arbitration agreement was formed. *Maravilla*, 783 F. App'x at 394 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The Agreement at issue here does not contain a choice-of-law provision. "Texas courts apply the 'most significant relationship test' to determine which state's

law to apply in a breach of contract case." *Krohn v. Spectrum Gulf Coast, LLC*, 2019 WL 4572833, at \*2 (N.D. Tex. Sept. 19, 2019)(Scholer, J.). "Relevant factors to consider under this test include 'the place where the injury occurred, the place where the injury causing conduct occurred, the parties' residence, and the place where the relationship, if any, between the parties is centered." *Colony Ins. Co. v. Emerald Valley Villas Homeowners' Ass'n, Inc.*, 2021 WL 8014528, at \*3 (N.D. Tex. Feb. 8, 2021)(Rutherford, M.J.) (quoting *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003)). Plaintiff was allegedly injured while working for Defendant at its facility in Texas, Plaintiff resides in Texas, and the employment relationship is centered in Texas. Further, the parties agree that Texas law applies. *See, e.g.,* Doc. No. 20 at 5 (citing Texas law; Doc. No. 24 at 3 (same); Doc. No. 25 at 3 (same). Thus, where appropriate, the Court applies Texas law. *See Signal Ridge Owners Ass'n, Inc. v. Landmark Am. Ins. Co.*, 657 F. Supp. 3d 866, 873 (N.D. Tex. 2023)(Fitzwater, S.J.).

## III.   Analysis

Defendant moves the Court to compel Plaintiff to arbitrate his claims pursuant to the valid Agreement between the parties which requires arbitration of all workplace-injury claims.  Doc. No. 20 at 5-9.  Plaintiff responds that the Court should deny the Motion because: (1) Defendant failed to satisfy the conditions precedent to invoke arbitration under the Agreement; (2) Defendant substantially invoked the judicial process thereby waiving its right to compel arbitration; and (3) the Agreement is unconscionable.  Doc. No. 24 at 3-10.  In its Reply, Defendant reiterates that the

parties have a valid Agreement to arbitrate these claims. Doc. No. 25 at 2-3. Defendant also directs the Court to a delegation clause in the Agreement which provides that questions or disputes regarding the Agreement, such as formation, interpretation, enforcement, or validity, "shall be" submitted to the arbitrator. *Id.* (citing Doc. No. 20-2 at ¶ 6.3).

The relevant documents to this Motion are the Summary of the Dispute Resolution Plan for Texas Work Place Injuries and the Dispute Resolution Plan for Texas Work Place Injuries. The Summary of the Dispute Resolution Plan for Texas Work Place Injuries (the "Summary") provides a summary of Defendant's "required and exclusive way to deal with all Disputes regarding work place injuries between [Defendant] the Company and its Employees." Doc. No. 20-3 at 2. The Summary states that the Agreement "is binding on both the Company and the Employees" and "[n]either the Company nor the Employees can sue in any court based on any Claim or Dispute arising out of Or [sic] related to a work place injury." *Id.* In fact, the Summary repeats no less than three times that an employee cannot file a lawsuit against Defendant in state or federal court for a work place injury, regardless of the extent of said injury. *Id.* at 2-3; *see id.* at 5 (acknowledgment page whereby employee affirms "I am required to resolve all legal claims against the Company regarding work place injuries through this process instead of through the court system."). The Summary explains the informal three-step dispute process and that binding arbitration will follow as "the next step" if necessary. *Id.* In emphasizing that it is merely a summary of the

6

Dispute Resolution Plan, the Summary also states that the Dispute Resolution Plan "is controlling over this summary and may be obtained from the Human Resources Department and should be read carefully by each Employee." *Id.* at 3.  On the "Employee Acknowledgment and Receipt" page, the employee affirmatively acknowledges "receipt of the Summary of the Dispute Resolution Plan for Texas Work Place Injuries for U.S. Foods and its Texas Employees," and affirms that the employee "will immediately become familiar with [the Dispute Resolution Plan's] contents." *Id.* at 5.  The employee further affirms that he and Defendant "are both waiving all rights which either may have with regard to trial by jury for work place injuries" and that the employee is "required to resolve all legal claims against the Company regarding work place injuries through this process instead of through the court system." *Id.*

The Dispute Resolution Plan for Texas Work Place Injuries (the "Agreement") is, by its express terms, "an arbitration agreement."  Doc. No. 20-2 at ¶ 6.4.  In explaining its purpose, the Agreement provides that it "is the required and exclusive way to deal with any and all disputes regarding work place injuries" between Defendant and its employees, and that neither Defendant nor the employee "can sue the other in any court over differences based on a Claim or Dispute arising out of or related to their work place injury." *Id.* at 4.  The Agreement provides that, if the informal dispute resolution process does not solve the dispute, Defendant and the employee agree that the dispute "shall be arbitrated." *Id.* at ¶ 4.1.  The Agreement also includes a provision explaining that "[a]ny question or dispute concerning how the [Agreement] is formed,

applied, interpreted, enforced, or whether the [Agreement] is valid, re-workable, or fair, shall be subject to Arbitration as provided by the Agreement." *Id.* at ¶ 6.3(a). By its express terms, the Agreement is mutually binding. *Id.* at ¶¶ 6.2, 6.15; *see id.* at 4 ("[T]he Parties agree to ultimately settle their differences or disputes in Arbitration rather than litigation (in court).").

A.     **First Step—Did the Parties Enter Into Any Arbitration Agreement At All?**

1.     **Defendant Establishes an Agreement to Arbitrate Exists**

The Court's determination of whether an arbitration agreement exists is governed by state law and, here, the parties agree Texas law controls. *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 685, 688 (5th Cir. 2018). "[A]n employer attempting to enforce an arbitration agreement must show the agreement meets all requisite contract elements." *J.M. Davidson*, 128 S.W.3d at 228. To establish a binding contract under Texas law, the employer must show: "(1)an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba*, 892 F.3d at 689 (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012)). "Texas has no presumption in favor of arbitration when determining whether a valid arbitration agreement exists." *Id.* at 688 (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)).

Defendant satisfied its initial burden of showing the parties have a binding Agreement to arbitrate.  Defendant submitted a copy of the Summary and a copy of the Agreement showing that both Defendant and Plaintiff agree to arbitrate all workplace injury disputes.  Doc. No. 20-1 at ¶ 4; Doc. No. 20-2; Doc. No. 20-3; *cf. In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002) (arbitration agreement upheld between employer and at-will employee where both parties agreed to submit employment disputes to arbitration).  Defendant requires all new employees to review the Summary of the Agreement and, further, to electronically acknowledge their review and understanding of the Agreement.  Doc. No. 20-1 at ¶4.  On November 14, 2022, his first day of work, Plaintiff reviewed the Summary (and other onboarding documents as well) during his on-site orientation, and did so utilizing Defendant's human resources software platform.  Doc. No. 20-1 at ¶¶ 4, 6; *see* Doc. No. 24-1 at ¶ 21.  Upon reviewing the document, Plaintiff was required to then select the box stating, "I acknowledge that I have received and read this Acknowledgement and the Policy. I acknowledge that I fully understand the Policy."  Doc. No. 20-1 at ¶ 6.  Defendant attached its internal timestamped document showing that an electronic acknowledgement attributed to Plaintiff (which functioned as his "signature") was captured at 4:18 p.m. on November 14, 2022.  Doc. No. 20-4; *see* Doc. No. 20-1 at ¶ 6.  In support of its Motion, Defendant submitted the sworn declaration of Katharine Rifki, a Region HR Business Lead for Defendant, which authenticates these documents

and Defendant's processes.  Doc. No. 20-1; *see ReadyOne Indus., Inc. v. Casillas*, 487 S.W.3d 254, 258-59 (Tex. App.—El Paso 2015).

On this record, Defendant met its burden to show by a preponderance of the evidence that the parties formed an agreement to arbitrate.  *See Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012) (per curiam) ("The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence.").

### 2.    Plaintiff Fails to Put Agreement "In Issue"

Because Defendant produced competent evidence of an arbitration agreement was formed, the burden shifts to Plaintiff who must, under § 4 of the FAA, "produce *some* contrary evidence to put the matter 'in issue.'" *Gallagher v. Vokey*, 860 F. App'x 354, 357-58 (5th Cir. 2021)(per curiam). The Fifth Circuit has not defined the evidentiary standard for proving or disproving an arbitration agreement exists.  *Id.* at 357; *see also Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443 (N.D. Tex. 2019)(Scholer, J.) (acknowledging that "the Fifth Circuit has never discussed the appropriate standard for a district court to apply when considering a motion to stay or compel arbitration" but "agree[ing] with the weight of authority" that the summary judgment standard applies) (collecting cases).  But the Fifth Circuit has explained that "[t]o put the making of the arbitration agreement 'in issue', a party is required to 'unequivocally deny' that he agreed to arbitrate and produce 'some evidence'

10

supporting his position." *Gallagher*, 860 F. App'x at 357 (quoting *Chester v. DirecTV, LLC*, 607 F. App'x 362, 363-64 (5th Cir. 2015)(per curiam)).

In his Response, Plaintiff puts forth three arguments:  (1) Defendant's failure to meet the conditions precedent to invoke arbitration under the Agreement "precluded the formation" of an agreement to arbitrate; (2) Defendant waived its right to arbitrate because it substantially invoked the judicial process; and (3) the Agreement is unconscionable.

Plaintiff makes a cursory statement that he "had neither the opportunity to read the agreement, nor did he sign it."  Doc. No. 24 at 10.  Plaintiff does not, however, unequivocally deny that he agreed to arbitrate.  Nor does Plaintiff cite to any evidence in support of the responsive argument that he did not sign the Agreement. *See Gallagher*, 860 F. App'x at 357 (party resisting arbitration must produce "some evidence" in support of his position).  In fact, Plaintiff's unsworn declaration does not support this this conclusory assertion.  Plaintiff states,

> I remember looking at some documents on the computer, but do not recall seeing anything about any arbitration agreement. I remember clicking through different windows quickly so I could make it to the next part of orientation.  There was not enough time to read everything on the computer because we had a tour of the facility after the computer work.

Doc. No. 24-1 at ¶ 21; *cf. S.E.C. v. Am. Automation, Inc.*, 2020 WL 570700, at *1 (N.D. Tex. Feb. 28, 2002)(Fitzwater, J.) ("Unsworn assertions set out in a complaint or brief do not constitute summary judgment evidence. 'Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence.'") (quoting *Larry*

*v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991)). The Fifth Circuit has emphasized the "important conceptual difference between 'I don't remember' and 'I didn't sign it,' and the latter—backed by evidence—is what would be required to overcome" the employer's evidence that an arbitration agreement exists. *Gallagher*, 860 F. App'x at 359. Simply put, Plaintiff did not produce any evidence to put the formation of the arbitration agreement "in issue". *See Gallagher*, 860 F. App'x at 357-58.

Plaintiff's other arguments are simply defenses to the validity or enforcement of the Agreement and, for the following reasons, have no bearing on the formation of the arbitration agreement despite Plaintiff's attempt to characterize them as such. First, a procedural condition precedent to arbitration "determines *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all." *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 35 (2014). Under the clear language of the Agreement, Defendant and Plaintiff both agree that if the required informal steps "do not solve the Dispute," then the workplace injury dispute "shall be arbitrated." Doc. No. 20-2 at ¶¶ 3.1-3.4 (three-step internal process, "Solving Our Differences"); ¶ 4.1 ("Arbitration"). Plaintiff himself claims this informal three-step dispute process is a condition precedent to arbitration. *See, e.g.*, Doc. No. 24 at 1, 3-5. This condition precedent (and whether it was satisfied) does not go to the formation of the parties' Agreement to arbitrate. *BG Grp.*, 572 U.S. at 35 (citing 13 R. Lord, Williston on Contracts § 38:7, pp 435; § 38:4, p. 422 (4th ed. 2013) ("a 'condition precedent' determines what must happen before 'a contractual duty arises' but does not 'make the

*validity* of the contract depend on its happening'" (emphasis added)).  This issue is merely a defense to arbitrability which, here, is for the arbitrator to decide.  *See BG Grp.*, 572 U.S. at 34-35; *see Home Care Providers of Tex. v. Cross*, 3:19-CV-1680-N, 2020 WL 1819984, at *3 (N.D. Tex. Apr. 10, 2020)(Godbey, J.) ("When an arbitration clause includes a condition precedent, the arbitrator, not the Court, should determine whether the parties appropriately fulfilled the condition precedent.") (citing *BG Grp.*, 572 U.S. at 34-35).

Plaintiff also argues the Agreement is procedurally unconscionable because of the circumstance surrounding the formation of it.  First, the Court has already disposed of Plaintiff's cursory statement that he did not sign the Agreement and the lack of "some evidence" supporting that position.  Plaintiff next argues that he did not have the opportunity to read the Agreement as he was "rushed through" his orientation and does not recall seeing an arbitration agreement.  Doc. No. 24-1 at ¶ 21; *see* Doc. No. 24 at 10 (citing Doc. No. 24-16).  Under these circumstances, Plaintiff claims that he did not have "any meaningful choice" in agreeing to arbitration so the Agreement is unconscionable.  First, the case Plaintiff cites in support of the "meaningful choice" standard is a case applying New York state law pursuant to a choice-of-law provision in the underlying contract.  Even taking as true Plaintiff's assertion that he did not have time to read the Summary and/or the Agreement, Texas courts presume that a party "who has the opportunity to read an arbitration agreement and signs it, knows its contents."  *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996).  "Absent

fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he signed, regardless of whether he read it or thought it had different terms." *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005).  Plaintiff makes no argument and presents no evidence of fraud, misrepresentation, or deceit, and his failure to read the Summary and/or the Agreement does not alone affect the existence of an agreement to arbitrate between the parties. *See In re US Home Corp.*, 236 S.W.3d 761, 764 (Tex, 2007) ("Like any other contract clause, a party cannot avoid an arbitration clause by simply failing to read it."); *EZ Pawn*, 934 S.W.2d at 90.

The Court observes that the contract at issue is a digital one and does not include a "handwritten, wet-ink signature," but Plaintiff does not challenge the "electronic record or electronic signature" which Defendant attributes to him.  *See* TEX. BUS. & COM. CODE § 322.009(a). Nor does Plaintiff address any of the authentication methods for these "electronic signatures [which] sometimes involve nothing more than clicking a box online and recording the information in an electronic database." *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 205 (Tex. 2021) (citing *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 527 & n.1, 528, 532 (5th Cir. 2020)).  Regardless, the Court's analysis would not be affected because there is nothing to suggest any such challenge would impact the validity of the Agreement or otherwise satisfy Plaintiff's burden of putting the matter in issue.

Because he fails to produce "some evidence" putting the formation of the parties' agreement to arbitrate at issue, Plaintiff does not satisfy his burden and the Court proceeds to the next step.

### B.   Second Step—Is There a Delegation Clause?

Because Defendant points to a delegation clause, the Court's second step in this analysis is limited. The Court determines only "whether the Agreement contains a delegation clause that 'clearly and unmistakably' provides for the validity and enforceability of the arbitration agreement to be decided by the arbitrator." *Maravilla*, 783 F. App'x at 396; *accord Edwards*, 888 F.3d at 744-46. Unless the party opposing arbitration challenges the delegation provision, the court "must treat it is as valid under [9 U.S.C.] § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the [arbitration agreement] as a whole for the arbitrator." *Rent-a-Center*, 561 U.S. at 72; *see Edwards*, 888 F.3d at 744 ("If there is an agreement to arbitrate with a delegation clause, and absent a challenge to the delegation clause itself, we will consider that clause to be valid and compel arbitration.").

The parties expressly agreed to submit "[a]ny question or dispute concerning how [the Agreement] is formed, applied, interpreted, enforced, or whether the Plan is valid, reworkable, or fair, shall be subject to Arbitration as provided for by the Plan." Doc. No. 20-2 at ¶ 6.3(a). Such language is considered to be "broad and unqualified" and "confirms that the delegation of arbitrability was intended to apply to *all* disputes between the parties." *Maravilla*, 783 F. App'x at 396 (quoting *Richland Equip. Co. v.*

*Deere & Co.*, 745 F. App'x 521, 525 (5th Cir. 2018)). Further, "the adoption of specific arbitration rules . . . shows that a party knowingly intended to arbitrate gateway issues of arbitrability." *Maravilla*, 783 F. App'x at 396 (citing *Rent-a-Center*, 561 U.S. at 79); *see* Doc. No. 20-2 at ¶ 1.12 (identifying applicable rules of arbitration).

The delegation clause in the parties' Agreement is a "specific written 'provision' to settle by arbitration a controversy'" and Defendant seeks to enforce this clause. *Rent-a-Center*, 561 U.S. at 72 (quoting § 2). Plaintiff's unconscionability claims focus on the validity of the overall Agreement, not the delegation clause specifically. In fact, Plaintiff does not address the delegation clause, let alone challenge it. Under binding case law, the Court must consider the delegation clause to be valid under § 2 and, accordingly, must enforce it under §§ 3 and 4, leaving for the arbitrator Plaintiff's challenge to the validity or enforcement of the overall Agreement. *Id.*; *see Maravilla*, 783 F. App'x at 396-97 (holding that, where the employee's unconscionability argument attacked the overall agreement and he did not specifically challenge the delegation clause, the delegation clause was valid and the employees challenges to the agreement must be submitted to the arbitrator); *see also Ridge Nat'l Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 129-130 (Tex. App.—El Paso 2018) (holding that unconscionability (substantive and procedural) is an affirmative defense against the enforcement of an existing contract, and where there is delegation clause, challenges to the enforcement of the contract as a whole are for the arbitrator, not the court).

### C.    Defendant's Request for Attorneys' Fees

Defendant asks the Court to award its attorneys' fees incurred in bringing the instant Motion citing a term of the Agreement which provides,

> Attorney's Fees.  Any Party that improperly files a lawsuit or causes a lawsuit to be filed in any court instead of following the Plan shall be liable for the other Party's attorney's fees to compel compliance with this Plan.

Doc. No. 20-2 at ¶ 5.3.  Plaintiff challenges Defendant's entitlement to these fees, arguing that he "properly filed a lawsuit on his legally justified positions".  Doc. No. 24 at 12.  Plaintiff also asserts that the Agreement's provision regarding attorneys' fees (¶ 5.3) and the provision requiring the parties to share equally arbitration costs (¶ 4.2) are unconscionable, and he asks the Court to strike and sever these provisions. *Id.* at 11-12.

The Court has already determined that Plaintiff's unconscionability issues, which challenge the Agreement rather than the delegation clause, are for the arbitrator to decide.  So too is Defendant's request for attorneys' fees incurred in seeking to compel arbitration.  Pursuant to the clear language of the delegation clause, whether Defendant is entitled to these fees is for the arbitrator to decide.  Doc. No. 20-2 at ¶ 6.3(a) ("Any question or dispute concerning how [the Agreement] is formed, applied, interpreted, enforced, or whether the Plan is valid, reworkable, or fair," shall be decided by the arbitrator.).  The Court **denies without prejudice** Defendant's request for attorneys' fees as this is an issue reserved for the arbitrator.

17

###### D.     Defendant Did Not Waive its Right to Arbitrate

Plaintiff argues that Defendant waived its right to assert arbitration because it substantially invoked the judicial process.  To be sure, a party may waive its right to arbitrate.  *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009).  Waiver is typically "found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party".  *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004).  However, "in the wake of *Morgan [v. Sundance*, 596 U.S. 411 (2022)]", another court in this District concluded that the "surviving test for waiver in this circuit is the remainder of the Fifth Circuit's prior test: whether the party has substantially invoked the judicial process." *Seifert v. United Built Homes, LLC*, 684 F. Supp. 3d 555, 568-69 (N.D. Tex. 2023)(Brown, J.) (citing *Vollmering v. Assaggio Honolulu, LLC*, NO. 2:22-CV-00002, 2022 WL 6246881, at * 12 (S.D. Tex. Sept. 17, 2022)). "To invoke the judicial process, a party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009).

The record does not support a finding of waiver here. Defendant removed the case on November 3, 2023 (Doc. No. 1), participated in and filed the parties' court-ordered Joint Report on December 1, 2023 (Doc. No. 13), and filed the instant Motion to Compel Arbitration on April 4, 2024 (Doc. No. 20), five months after removal. Plaintiff cites only one case in support of his assertion that Defendant substantially

invoked the judicial process.  This case, however, is easily distinguishable from the matter before this Court.  In *Revilla v. Target Corp.*, 2014 WL 11484970 (N.D. Tex. Dec. 5, 2014)(Cureton, M.J.), the plaintiff moved to compel arbitration after the defendant removed the case from state court.  *Id.* at *1.  In denying the motion, the court found, not surprisingly, that the plaintiff had waived her right to seek arbitration after having filed suit in state court, then filed a motion to remand after removal, and, after losing her bid to remand the case and never having mentioned arbitration prior, moved to compel arbitration almost one year after initially filing the case.  *Id.* at *2.

The Court cannot find that Defendant substantially invoked the judicial process by the very limited actions it has taken in this case. *See Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661-62 (5th Cir. 1995) (concluding defendant did not waive right to arbitrate despite removing action to federal court, filing motion to dismiss, filing motion to stay proceedings, answering complaint, asserting counterclaim, and engaging in discovery); *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576-78 (5th Cir. 1991) (determining defendant did not waive right to arbitrate where it removed case to federal court and then filed an answer, engaged in discovery, and participated in a court-ordered pre-trial conference prior to moving to compel arbitration).  The Court finds that Defendant did not waive its right to seek arbitration.

### E.      Dismiss or Stay?

Defendant moves the Court to dismiss this case because all claims must be arbitrated.  Doc. No. 20 at 9.  The Supreme Court of the United States recently

addressed whether a case that falls within the FAA can be dismissed. *Smith v. Spizzirri*, 601 U.S. 472 (2024). The Supreme Court expressly held that § 3 does not permit a court to dismiss, rather than stay, a case which is subject to arbitration where a party requests a stay pending arbitration. *Id.* at 474 & 478.

Plaintiff does not ask the Court to stay this matter should the parties be ordered to arbitrate. Plaintiff merely asks the Court to deny Defendant's Motion altogether. Nor did Plaintiff seek to supplement his briefing to request a stay after the *Smith* decision was issued. Nevertheless, the Court concludes that the better course here is to **stay** this case pending arbitration proceedings. *See id.*

## IV. Conclusion

"If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Kubala*, 830 F.3d at 202. The Court finds this case to be no exception. The Court concludes that Plaintiff and Defendant formed an agreement to arbitrate and the arbitration agreement includes a valid delegation clause. The Court also finds that Defendant did not substantially invoke the judicial process such that it waived its right to arbitrate. For these reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration. The Court **DENIES without prejudice** Defendant's request for an award of attorneys' fees. The Court **DENIES** Defendant's Motion to Dismiss and hereby **STAYS** this matter pending arbitration proceedings or until the parties jointly move or stipulate to dismissal of this case.

There appears to be no further reason at this time to maintain the file as open for statistical purposes.  The Clerk is, therefore, instructed to submit a JS-6 form to the Administrative Office, thereby removing this case from the statistical records.  Nothing in this Order shall be considered a dismissal or disposition of this case, and should further proceedings become necessary or desirable, any party or the Court may initiate such further proceedings in the same manner as if this Order had not been entered.

**SO ORDERED.**

Signed July 31st, 2024.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE